UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10427-RWZ

CRAIG BREAKIRON

v.

LAUREN BREAKIRON GUDONIS, *et al.*

Memorandum of Decision

August 10, 2010

ZOBEL, D.J.

## I.     Overview

Plaintiff Craig E. Breakiron ("Craig Breakiron" or "Craig") brings this action to rescind two disclaimers of undivided interests in real property located in Nantucket County, Massachusetts, in order to avoid triggering the imposition of a federal gift tax. Craig initially filed suit in state court; the United States removed to this court, opposed rescission, and filed a counterclaim for the amount of the federal gift tax. Now pending are cross-motions for summary judgment. The facts are not in dispute.

## II.    Facts

### A.     Formation of the Trust

Craig's parents, Lauren and Margit Breakiron, were the owners of property located at 69 Hulbert Avenue in Nantucket. In 1995, each parent transferred his or her respective one-half undivided interest in the property to separate Qualified Person Residence Trusts (QPRTs), and were named Settlors of the QPRTs. Under the terms

of the trust, each Settlor retained the right to live on the property for a period of ten years (the Trust Term). The QPRT instrument further provided that after the expiration of the Trust Term, if the Settlor of each QPRT was then living, the property would pass to "such of the Settlor's children as shall then be living, the same to be divided between or among them in equal shares and held by them as tenants-in-common ...." See Docket # 1, Exhibit A, Affidavit of Lauren Breakiron Gudonis ¶ 4.

### B.     Transfer of the Property

The Trust Term expired on September 27, 2005, at which time both Settlors were still living, and in accordance with the QPRT, the property passed in equal parts from each parent to Craig and his sister Lauren Breakiron Gudonis as tenants-in-common. All other interests in the property were extinguished.

Had Craig Breakiron accepted the property as a gift from his parents pursuant to the QPRT, he would have had an interest as a tenant-in-common with Lauren. However, he wanted to transfer his interest to Lauren, and accordingly, sought to disclaim the gift.

### C.     Qualified Disclaimers

Under the Internal Revenue Code, a taxpayer may disclaim a gift of property. See 26 U.S.C. § 2518(a). If the taxpayer makes a "qualified disclaimer," the property will be deemed to have "never been transferred" to him or her for gift tax purposes. Id; see also 26 CFR § 25.25181(b). Rather, the property passes to the next designated beneficiary as though the transferor had left it directly to her. See 26 CFR § 25.25181(b).

In order for a disclaimer to be "qualified" under the statute, the document effecting the disclaimer must be received by the transferor (or the transferor's legal representative or the holder of legal title to the disclaimed property) within nine months after the later of (a) the date on which the transfer creating the interest in the disclaimant is made; or (b) the date on which the disclaimant attains twenty-one years of age. See 26 U.S.C. § 2518(b)(2)(A)-(B). Moreover, under Treasury Regulation 26 CFR § 25.2518-2(c)(3)(I), such a disclaimer must be made within this nine-month "window" even if the disclaimant's interest in the disclaimed property is not then vested or is then contingent.

In the instant case, since the disclaimant turned 21 before the creation of the QPRT, an effective disclaimer had to be executed within nine months of September 27, 1995 (the date on which the transfer creating the interest in the disclaimant was made — here the date on which Craig's parents created a QPRT). The deadline was thus June 27, 1996. No disclaimer was executed at that time.

### D.   Consultation with Attorney

On September 27, 2005, the Trust Term expired, and in early 2006, Craig retained an attorney to determine the tax implications of his parents' gift and to devise a mechanism to transfer his interest in the property to his sister Lauren while incurring the lowest possible transfer tax. The attorney advised Craig that he could transfer the property to his sister by executing qualified disclaimers, and incorrectly advised that such disclaimers would be valid if executed within nine months after the <u>expiration</u> of the QPRT's Trust Term (before June 27, 2006), rather than within nine months after the

3

QPRT's <u>creation</u> (before June 27, 1996).  <u>See</u> Docket # 1, Exhibit G, Affidavit of Attorney ¶ 4.

### E.     Execution of the Disclaimers

Relying on this advice, Craig executed two disclaimers on April 10, 2006, one for each QPRT instrument.  The disclaimers were filed with the Nantucket Registry District of the Land Court on April 26, 2006.  On September 19, 2006, a new Transfer Certificate of Title was issued, naming Lauren Breakiron Gudonis as sole owner of the property.  However, Craig Breakiron later learned that the disclaimers were ineffective to avoid the imposition of taxes on the transfer.  Indeed, the IRS thereafter obtained a gift tax lien on the property in the amount of the outstanding tax (approximately $2.3 million) pursuant to 26 U.S.C. § 6324(b).  In October 2008, Craig filed another action for reformation in the Massachusetts Land Court, and the United States removed to federal court.[1]

## III.   Analysis

### A.    Parties' Arguments

Craig Breakiron contends that but for his counsel's erroneous tax advice, he

---

[1] On June 29, 2007, Craig had filed an earlier complaint in the Massachusetts Land Court seeking reformation and rescission of the disclaimers.  <u>See</u> Docket # 1, Land Court Complaint.  On November 24, 2007, the Land Court issued an order, that in accordance with governing law, reported the case to the Appeals Court.  Craig's Application for Direct Appellate Review by the Massachusetts Supreme Judicial Court was allowed, and after oral argument, the SJC issued an order denying without prejudice Craig's requested relief on the ground that the record had not been adequately developed.  (Specifically, there were no sworn affidavits from the parties as to intent, nor were the trust instruments included in the record).  <u>See</u> <u>Breakiron v. Gudonis</u>, 452 Mass. 1008, 893 N.E.2d 351, 352 (Mass. 2008).

would not have executed the disclaimers. In general, when a disclaimer is ineffective, the interest in the property will be treated as having passed from the Settlor to the intended donee, with the intended donee then re-gifting the interest to the eventual recipient. Here, by executing ineffective disclaimers, Craig caused the property to be passed from the Settlors to himself (as tenant-in-common), and he then re-gifted his interest to his sister Lauren. Therefore, he, as a donor, became liable for federal gift tax. See 26 U.S.C. § 2502(c); 26 U.S.C. § 102(a). The gift was subject to a tax rate of 45% of the value of his interest in the property on the date it was transferred; thus, Craig owed federal gift tax in the amount of approximately $2.3 million. He asserts that had he known the disclaimers would not qualify for reduced tax treatment, he would have transferred the property to his sister by creating a new QPRT, naming her as the beneficiary, which would have significantly reduced his tax liability. See Docket # 1, Exhibit F, Affidavit of Craig Breakiron ¶ 15.

Craig now seeks rescission of the disclaimers to render them nugatory. He seeks to void the existing Certificate of Title and obtain a new Certificate of Title naming him and Lauren each as owners of an undivided one-half (½) interest in the property as tenants-in-common.

The government contends that the federal gift tax became due and owing once the invalid disclaimers were executed, and that rescission thereof will not abrogate Craig's obligation to pay federal gift tax.

    **B.**    **Rescission of the Disclaimers Under Massachusetts State Law**

In general, when a substantive rule underlying a federal tax matter is based on state law, federal courts in effect sit as a state court and, absent a decision on the matter sub judice by the state's highest court, apply state law. See Comm'r v. Bosch, 387 U.S. 456, 465 (1967).

Under Massachusetts law, a written instrument may be reformed or rescinded in equity on the grounds of mistake when there is "full, clear, and decisive proof" of the mistake. Simches v. Simches, 423 Mass. 683, 687-688 (1996) (citations omitted). Similarly, Massachusetts has recognized that a disclaimer may be reformed or rescinded if it was executed based on a mistake which frustrated the purpose for which the disclaimer was executed. See Kaufman v. Richard, 442 Mass. 1010, 1011 (2004) (reforming disclaimer where intent of disclaimant was to minimize tax consequences for disclaimant's children). The touchstone of the inquiry is the intent of the disclaimant.

Here, there is no question but that under Massachusetts state law, Craig is entitled to rescind his disclaimer. There is "decisive evidence of the [disclaimant's] intent to minimize transfer tax consequences." Kaufman, 442 Mass. at 1011. First, by their express terms, the disclaimers state that they were "intended to be ... Qualified Disclaimer[s] pursuant to 2518 of the Code." See Docket # 1, Exhibit F, Affidavit of Craig Breakiron, Exhibits 1 & 2. Second, Craig has submitted an affidavit stating that such was his intention at the time. See Docket # 1, Exhibit F, Affidavit of Craig Breakiron ¶ 8. Third, he has submitted an affidavit from his attorney, who stated that Craig communicated his intention at the time he executed the disclaimer. See Docket # 1, Exhibit G ¶ 3. The government does not dispute that this was his intent. The

6

disclaimers are inconsistent with Craig's intent and are therefore now rescinded. This rescission is granted nunc pro tunc, as of the date of their execution on April 16, 2006.[2]

### C.      Effect of Reformation on Federal Gift Tax Liability

The next question is what is the effect of reformation by a state court, if any, on the plaintiff's obligation to pay any federal tax that may have accrued with respect to the original transfer.

The case law addressing the question is, to put a fine point on it, divided. One line of cases holds that state law reformation of the original transfer does not abrogate federal tax liability. The rationale underlying this line of cases is that because neither party to the state law reformation proceeding has an interest in paying federal tax liability on the transfer, reformation under state law may not be the product of a bona fide adversary proceeding; rather, the possibility of "collusion" to avoid federal liability exists. This is especially so where the IRS was not a party to the state reformation proceeding and therefore cannot represent the federal government's interest in collecting federal taxes.

By contrast, another line of cases holds that where the underlying transfer has

---

[2] In granting rescission of the unqualified disclaimers under Massachusetts law, the court has reformed the instruments nunc pro tunc, literally, "now for then"; the new document replaces the old and it is as though the original transfer never occurred. See Taylor v. Sawyer, 284 F.3d 1143, 1145 (9th Cir. 2002) ("When an order is signed 'nunc pro tunc' as of a specified date, it means that a thing is now done which should have been done on the specified date" (quoting 35A C.J.S. Federal Civil Procedure § 370, at 556 (1960)). Under state law, if nunc pro tunc reformation is granted, it is as though no gift was ever made.

been reformed by a state court due to mistake, such reformation does abrogate a party's duty to pay federal taxes. The rationale underlying these decisions is that the original transfer was defective ab initio because the original instrument contained a mistake. As a result, there was no completed gift. See Dodge v. United States, 413 F.2d 1239, 1243 (5th Cir. 1969).

The first view is exemplified by Van Den Wymelenberg v. United States, 397 F.2d 443, 445 (7th Cir. 1968).[3] In that case, the trusts created by plaintiffs were later amended, but the court nevertheless declined to give retroactive effect to the amendment. In the lead case, the taxpayers created a trust for their grandchildren and attempted to structure the trust so that it would qualify for the annual gift tax exclusion.

---

[3] The seminal case is the Supreme Court's decision in Comm'r v. Bosch, 387 U.S. 456 (1967). Unfortunately, that case only addresses the first part of the inquiry here: whether a state court's determination of the question of reformation is binding on a federal court. In that case, the court considered the question of "what effect must be given a state trial court decree where the matter decided [by the state court] is determinative of federal estate tax consequences," noting that the issue "has long burdened the Bar and the Courts." Id. at 463. In a narrow ruling, citing Erie v. Tompkins, 304 U.S. 64 (1938), the court held that the federal authorities were not bound by the state court's reformation of the transfer where such determination was not made by the state's highest court. Bosch at 465. It further concluded that the federal court was not bound by the principles of res judicata or collateral estoppel, as the IRS was not a party to the state court proceeding. Id. at 463-464. Significantly, the court reasoned that not only did it not have to defer to the state court's determination, but that it should not do so because such proceedings often were characterized by a lack of a bona fide adversary proceeding, which could give rise to the possibility of collusion to avoid federal tax liability. Significantly, it did not reach the question of what effect reformation, once allowed, would have on the accrued federal tax obligation. Yet, as discussed infra, this same rationale — that state reformation proceedings may not be bona fide adversary proceedings — was adopted by the Van Wymelenberg court to answer this second question, i.e., what effect, if any, the state court's reformation has on the federal tax obligation.

The modifications were inadvertently not made, and the trust did not qualify for the exclusion. After the Commissioner disallowed the exclusions because the gifts did not qualify, the taxpayers executed a corrected trust agreement to be effective retroactively, which purported to bring the original agreement into conformity with the exclusion provision. The IRS refused to allow the exclusion on the ground that the corrected trust agreement did not have retroactive effect for federal tax purposes.

On appeal, the Seventh Circuit agreed, concluding that the amended trust agreement executed by taxpayers did not determine the federal gift tax consequences of the gift. Rather, the court held that the tax consequences were determined by the original agreement. The court rejected the contention that the earlier document contained a mistake, and was therefore subject to reformation under state law, stating in dicta that "not even judicial reformation can operate to change the federal tax consequences of a completed transaction." Id. at 445. "Were the law otherwise," the court reasoned, "there would exist considerable opportunity for 'collusive' state court actions having the sole purpose of reducing federal tax liabilities." Id.[4] Earlier courts also expressed concern over the potential for collusive state court actions in which the sole purpose was to defeat the federal tax that had accrued. See, e.g., Darlington's

---

[4] The government in this case has also urged another rationale offered in Van Den Wymelenberg, namely, that "federal tax liabilities would remain unsettled for years after their assessment if state courts and private persons were empowered to retroactively affect the tax consequences of completed transactions and completed tax years." Van Den Wymelenberg, 397 F.2d at 445. This is a makeweight argument. Many federal tax liabilities remain "unsettled" when they are litigated or the law allows the filing of amended returns.

Estate v. Comm'r, 302 F.2d 693, 695 (3d Cir. 1962) ("[] a state judgment obtained by collusion to defeat a federal tax need not be given conclusive effect in a suit in a federal court involving that tax") (citations omitted).

Several courts, following this logic, have held that when the United States is not a party to the state court proceeding, the state decree does not alter the federal tax liability. See, e.g., M.T. Straight's Trust v. Comm'r, 245 F.2d 327, 329 (8th Cir. 1957) (declining to alter federal tax liability that had accrued on the ground that nunc pro tunc reformation of trust does not alter the federal tax liability where United States was not a party to the reformation action; "[w]e think that it is both inequitable and beyond the power of a State Court to change retroactively the status of a federal revenue measure with a resulting loss of revenue to the government"); accord Emerson Institute v. United States, 356 F.2d 824, 826 (D.C. Cir. 1966) ("the law appears well established that a nunc pro tunc decree in proceedings to which the Internal Revenue Service is not a party is not binding on that Service for tax purposes... [The] decree could, at best, have operative consequences only as between the parties to the action in which it was entered") and American Nurseryman Publishing Co. v. Comm'r, 75 T.C. 271 (1980) (citing Van Wymelenberg and holding that nunc pro tunc voiding of transfer that otherwise destroyed 'S' corporation election, entered in state court action to which United States was not a party, did not affect federal income tax liability for already completed years).

The other line of cases holding that reformation does abrogate the obligation to pay federal taxes proceeds from the federal tax regulations. These regulations state

10

that a gift is complete and thereby subject to the gift tax only when the donor has "so parted with dominion and control as to leave him [or her] with no power to change its disposition." 26 CFR § 25.2511-2(b). Thus, when the donor avails himself or herself of the equitable right of reformation, the donor has not parted with dominion and control because there is an equitable right to change the disposition.

The lead case so holding is Dodge v. United States, 413 F.2d 1239, 1243 (5th Cir. 1969). In that case, plaintiff mistakenly transferred her entire interest in property (six acres) to charity when her intent was to convey only a 1/5 undivided interest in order to qualify for the charitable deduction on her federal income taxes. Thereafter, a reformation agreement was executed stating that the grantors intended to transfer only a 1/5 interest, and a reformed deed was issued to reflect the conveyance of the 1/5 interest. The IRS rejected the charitable deduction on the ground that the entire property had already been conveyed the year before. The district court held that state law reformation of the original transfer abrogated the federal tax liability. The Fifth Circuit affirmed because, it reasoned, the original instrument contained a mistake, and was "defective and imperfect at the moment it was created"; therefore the gift was "incomplete." See id. at 1243. Given the language of the tax regulation, the court held that a gift is not complete where the instrument may be reformed because "the grantor [] ha[s] in law a reserved power to revest the beneficial interest in [himself]...." Id.

Similarly, in Berger v. United States, 487 F. Supp. 49, 52 (W.D. Pa. 1980), the court held that a mistaken transfer is not a completed gift by virtue of the equitable right of reformation. Apparently misunderstanding the conflict rules pertaining to political

appointees, the taxpayer sought political appointment and liquidated his property and transferred it to two irrevocable trusts for the benefit of his wife and his children. Berger then sought judicial reformation of the trusts to make them revocable, which was granted. On cross-motions for summary judgment, the district court held that the instrument was properly reformed under state law, thus abrogating the gift tax imposed on the original transactions. It held that "[Berger's] gift into trust was incomplete for mistake, [thus] there can be no transfer tax ..." and, in cases of mistake, "courts have relieved taxpayers of gift tax liability on the ground that there existed a right to reformation under the applicable state law upon the production of requisite proof to the courts to establish the basis for reformation." Id. at 52.

A number of tax court decisions have followed this reasoning. See Touche v. Comm'r, 58 T.C. 565, 569 (1972) (petitioner executed a deed of gift of her property which contained a mistake in the percentage interest transferred and court held that no federal tax liability had accrued; "inasmuch as petitioner had, during the taxable years before us, the power to revest title in herself as to one-half of the interest purportedly conveyed in the [earlier] deeds, no completed gift was made as to that portion of the interest during those years"); Bergeron v. Comm'r, T.C. Memo 1986-587 (1986) (citing Dodge and Touche; concluded that "[b]ecause petitioner could have obtained amendment of the decree of distribution during the taxable year before us, no completed gift was made during that year") and Holland v. Comm'r, T.C. Memo 1997-302 (1997) (citing Dodge and Touche stated that "we find that the mistake [] was a scrivener's error.... We believe that the Supreme Court of Georgia would ... [grant

reformation]. It follows that, inasmuch as decedent had ... the power to revest title in herself [] [the transfer] was illusory and therefore did not have the necessary degree of completeness to be recognized for Federal tax purposes").

The two lines of cases are in tension, and, as a result, not easily reconciled. Each focuses on a different aspect of the transaction. Van Den Wymelenberg denies retroactive tax consequences to amendments and reformation of gifts by state court in non-adversarial proceedings. Dodge and its progeny grant such relief in reliance on tax regulations that treat as a gift a transfer of property only when the donor has given up all dominion over the property and has no power to change it. Nevertheless, the cases are perhaps not as irreconcilable as their holdings suggest. The court in Van Wymelenberg required the IRS to be a party to guard against the possibility of "collusion," that is, usurpation of the federal interest in collecting federal taxes, since both parties to a state court proceeding may have a common interest in minimizing federal tax liability. See Van Den Wymelenberg v. United States, 397 F.2d 443, 445 (7th Cir. 1968). A contested proceeding in which the IRS is a party would provide it with the opportunity to cross-examine the plaintiff to ensure that there was a genuine mistake (as in Dodge and Berger), rather than a post hoc attempt to minimize a federal tax obligation or to avail oneself of a tax advantage unbeknownst to the plaintiff at the time of the original transfer.

At any rate, it is unnecessary to resolve this conflict as Van Den Wymelenberg is inapposite to the facts of this case. Here, there is no issue regarding collusion. The federal court, not the state court, has granted rescission of the disclaimers. The IRS is

a party to the proceeding. Moreover, the IRS does not dispute that Craig made a mistake when he executed the disclaimers. While the mistake was not a mere "scrivener's error," it was a mistake at the time he disclaimed — not a hindsight decision by plaintiff to avail himself of a tax advantage. The IRS had an opportunity during this proceeding to adduce evidence that plaintiff's execution of the disclaimers was something other than a mistake, and did not.[5] Accordingly, reformation of the disclaimers is conclusive of the federal tax liability.

## IV.  Conclusion

For the reasons discussed above, the disclaimers executed on April 10, 2006, are rescinded nunc pro tunc. The rescission binds all parties to this action and is conclusive for federal tax purposes. Plaintiff's motion for summary judgment (Docket # 13) is ALLOWED. The Government's Motion for Summary Judgment (Docket # 15) is DENIED. Judgment may be entered accordingly.

    August 10, 2010                                              /s/Rya W. Zobel
          DATE                                                      RYA W. ZOBEL
                                                            UNITED STATES DISTRICT JUDGE

---

[5] I would further note that a necessary consequence of the government's position is that Craig now receives the property back but would still be required to pay a gift tax. Under this logic, Craig could be taxed again when he ultimately disposes of the property.